# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**SAMUEL BRAMINA-LOPEZ,**

          **Petitioner,**

-vs-                                                          Case No. 6:07-cv-1351-Orl-19KRS

**UNITED STATES OF AMERICA,**

          **Respondent.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, Petitioner Samuel Bramina-Lopez, true name Deonisio Montano-Gomez (Doc. No. 1, filed Aug. 27, 2007);

2. Brief in Support of 28 USC Section 2255 Motion by Petitioner (Doc. No. 2, filed Aug. 27, 2007); and

3. Response in Opposition to Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 by Respondent United States of America (Doc. No. 7, filed Nov. 29, 2007).

## Background

An Indictment was returned against Petitioner Samuel Bramina-Lopez, true name Deonisio Montano-Gomez, in the Middle District of Florida on June 1, 2005, charging Petitioner with being "found in" the United States after an illegal reentry in violation of Section 276 of the Immigration

and Nationality Act, 8 U.S.C. § 1326 (2000).[1] (Crim. Doc. No. 10.[2]) Petitioner filed a Notice that he was changing his plea to guilty on August 26, 2005. (Crim. Doc. No. 35.) He also gave consent at that time to a pre-sentence investigation by the United States Probation Office ("Probation"). (Crim. Doc. No. 36, filed Aug. 26, 2005.)

Probation completed its final pre-sentence investigation report ("PSR") on November 2, 2005. The PSR indicates that Petitioner is a Hispanic male born on December 1, 1971 in Mexico. (PSR at ii (unpaginated).) He is an illegal alien. (*Id.*) While in this country, Petitioner has used a number of aliases, birth dates, and alien registration numbers. (*Id.*) His criminal history includes convictions for: (1) robbery in Portland, Oregon on August 2, 1990 for which he was sentenced to 90 days of imprisonment; (2) possession of cocaine in Salem, Oregon on August 28, 1991 for which he was sentenced to 15 days of imprisonment; (3) two counts of rape in the second degree in Portland, Oregon on November 17, 1993 for which he was sentenced to 24 months of imprisonment; (4) delivery of a controlled substance in Salem, Oregon on November 24, 1995 for which he was sentenced to 11 months of imprisonment; (5) illegal re-entry into the United States in Portland, Oregon on November 18, 1996 for which he was sentenced to 20 months of imprisonment; and (6) illegal re-entry into the United States in Del Rio, Texas on April 3, 1998 for which he was sentenced to 100 days of imprisonment. (*Id.* at 3-6, ¶¶ 26-31.) In addition, he was purportedly arrested for: (1) failing to carry / present an operator's license in Dallas, Oregon on April 25, 1991; (2) the unauthorized use of a motor vehicle in Portland, Oregon on May 12, 1991; and (3) failing to carry

---

[1] The 2000 publication of the United States Code was in effect at the time of Petitioner's adjudication of guilt and sentencing in 2005.

[2] Documents from the underlying criminal case, 6:05-cr-100-Orl-19KRS, will be cited as "Crim. Doc. No. ___."

/ present an operator's license and providing false information to a police officer on August 13, 1995. (*Id.* at 7, ¶¶ 36-37, 40.) The dispositions of these arrests is unknown. (*Id.*) Also, Petitioner has previously been deported from this country to Mexico on four separate occasions: November 19, 1991; April 28, 1993; May 27, 1995; and December 26, 1997. (*Id.* at 2, ¶¶ 8-10.)

After receiving the initial PSR, Petitioner's trial counsel, Clarence W. Counts, wrote a letter to Probation in which he stated, "Mr. Lopez and I reviewed the Presentence Report prepared by your office in reference to the above manner. Our objections are set forth below." (Letter from Clarence W. Counts, Assistant Federal Public Defender, to William R. Hutchinson, United States Probation Officer (Oct. 31, 2005) (on file with Petitioner's PSR).) The objections were described as follows:

PART B. THE DEFENDANT'S CRIMINAL HISTORY

26. Mr. Lopez did not have $950 from Kerry Rouw. No injury was caused to Mr. Rouw. Three people were involved with this matter and only 12 bottles of beer was [sic] taken.[3]

28. The alleged victim was Mr. Lopez's live in girlfriend and she was 15.[4]

36. Mr. Lopez was not arrested for this offense.[5]

(*Id.*) Probation reported that these objections were resolved prior to Petitioner's sentencing hearing, and Petitioner's trial counsel confirmed this at the hearing. (Crim. Doc. No. 55 at 4.)

---

[3] Paragraph 26 of the PSR described Petitioner's robbery conviction and stated that Petitioner took $950 from the victim, Kerry Rouw, without Rouw's permission. Petitioner received two criminal history points for this offense.

[4] Paragraph 28 of the PSR described Petitioner's rape convictions. Petitioner received three criminal history points for this offense.

[5] Paragraph 36 of the PSR described an April 25, 1991 arrest in Dallas, Oregon for "failure to carry / present [an] operator's license." This arrest was not scored in Petitioner's criminal history calculation.

Nevertheless, before the pronouncement of sentence, Petitioner's counsel indicated that Petitioner would like "to address the issue of robbery." (*Id.* at 14.) He stated, "My client would like to make a statement about it." (*Id.*) The Court permitted Petitioner to make a statement, in which Petitioner explained that the robbery did not involve the theft of $950 but instead involved the theft of a twelve-pack of beer. (*Id.* at 14-19.) Upon hearing Petitioner's statement, the Court agreed to change the factual recitation in the criminal history section of the PSR to reflect this version of the events. (*Id.*) The Court concluded that these revisions did not alter Petitioner's criminal history score and even if the two points scored for this robbery offense were discounted, Petitioner would have a total of 14 criminal history points which would leave him in criminal history category VI. (*Id.* at 17.) There being no unresolved objections to the PSR, the Court proceeded to sentencing. (*Id.* at 19.)

Petitioner's guideline range was computed as follows. The base level for his offense was 8, and he received a 16-level enhancement for having been "previously deported after a conviction for a felony that is a crime of violence," resulting in an adjusted offense level of 24. (PSR at 3, ¶¶ 16-17, 21.) He received a three-level reduction for acceptance of responsibility; therefore, his total offense level was 21. (*Id.* ¶¶ 22-24.) His criminal convictions resulted in a subtotal criminal history score of 14, and he received two additional points for committing the instant offense less than two years following his release from custody. (*Id.* at 6, ¶¶ 32-33.) Thus, his total criminal history score was 16 which placed him in criminal history category VI. (*Id.* ¶ 34.) Pursuant to the Sentencing Table in the 2005 United States Sentencing Commission Sentencing Guidelines Manual ("U.S.S.G."), Petitioner's guideline range was 77 to 96 months. (*Id.* at 10, ¶ 58.) The Court

sentenced Petitioner within this range to a term of imprisonment of 80 months. (Crim. Doc. No. 45 at 2, filed Nov. 22, 2005; Crim. Doc. No. 55 at 20.)

Petitioner appealed his sentence, arguing "that the court plainly erred by enhancing his sentence based on a prior conviction that was not proven to a jury or admitted by him." *Bramina-Lopez v. United States*, 182 F. App'x 942, 944 (11th Cir. 2006). Petitioner was represented by his trial counsel, Mr. Counts, on appeal. The Eleventh Circuit Court of Appeals affirmed Petitioner's conviction, explaining, "Here, Bramina-Lopez cannot show plain error in his guidelines calculations. An enhancement based on a prior conviction, even if not admitted by the defendant, does not represent a constitutional *Booker* error." *Id.* The Court continued, "Moreover, by not challenging all of his prior convictions at sentencing, Bramina-Lopez admitted them. Therefore, there is no merit to Bramina-Lopez's arguments, and we AFFIRM." *Id.* (citations omitted).

Petitioner, proceeding *pro se*, filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. No. 1; Crim. Doc. No. 60.) He has also filed a Brief in support of his Motion. (Doc. No. 2.) The United States filed a Response in opposition to Petitioner's Motion. (Doc. No. 7.) On January 4, 2008, because Petitioner had not yet filed a Reply Brief, the United States Magistrate Judge issued an Order advising Petitioner "out of an abundance of caution that the denial of his motion at this stage would represent a final adjudication of this case which may foreclose subsequent litigation on the matter" and granting Petitioner "thirty (30) days from the date of this order to file an opposition to the Government's response to his motion." (Doc. No. 8 at 1, filed Jan 4, 2008.) Nevertheless, Petitioner did not file a Reply Brief, and the thirty-day deadline imposed by the Magistrate Judge has long since passed.

**Standards of Review**

**I.     Relief**

Section 2255 provides federal prisoners with an avenue for relief under limited circumstances:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2006). Thus, a federal prisoner may obtain relief under Section 2255 only if his sentence (a) was imposed in violation of the Constitution or federal laws, (b) was imposed by a court without jurisdiction to do so, (c) was in excess of the maximum permitted by the law, or (d) is otherwise subject to attack. *Id.*; *Boccio v. United States*, Nos. 6:05-cv-179-Orl-19DAB, 6:02-cr-189-Orl-19DAB, 2006 WL 4761060, at *4 (M.D. Fla. Oct. 20, 2006). If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255. To obtain this relief on collateral review, however, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

**II.     Hearing**

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." The

Eleventh Circuit Court of Appeals has explained, "A habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir.1989)). However, the Eleventh Circuit continued, "A district court . . . need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel." *Id.* at 1154. In other words, "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007); *see also Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous").

**Analysis**

**I. Ground One: Ineffective Assistance of Counsel**

Petitioner claims that his appointed trial attorney was ineffective by failing to: (1) argue that Petitioner remained out of the country for five years "as required," (2) object to Petitioner's reported robbery conviction when Petitioner had in fact been convicted of simple theft, (3) object that Petitioner's criminal history category overrepresented his criminal history, (4) argue for a downward departure based on Petitioner's stipulation of immediate deportation upon completion of his sentence, (5) offer any mitigating evidence in support of a downward departure of sentence, and (6) argue that the sentence imposed was unreasonable.[6] (Doc. No. 1 at 4; Doc. No. 2 at 2-3.)

---

[6] These claims have been restated and reorganized for the purposes of clarity.

### A. Applicable Legal Standards

Ineffective assistance of trial counsel claims are governed by the well-established, two-part test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this test, a petitioner must show that: (1) counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Id.* at 687-88. Failure to make the required showing of either deficient performance or sufficient prejudice defeats a petitioner's ineffectiveness claim. *Id.* at 700.

Under the first part of the test, the "performance" prong, "[t]he standard governing counsel's performance is 'reasonableness under prevailing professional norms.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Strickland*, 466 U.S. at 688). As observed by the Eleventh Circuit, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). "The petitioner's burden to prove by a preponderance of the evidence that counsel's performance was unreasonable is a heavy one." *Ford*, 546 F.3d at 1333. The petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and show that "no competent counsel would have taken the action that his counsel did take," *Ford*, 546 F.3d at 1333 (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). In reviewing the petitioner's claim, a court must judge the reasonableness of counsel's

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

To meet the second or "prejudice" prong, a petitioner must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Supreme Court has clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Under these rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

B.     **Petitioner's Claims of Ineffective Assistance**

1.     **Trial Counsel's Failure to Argue that Petitioner Had Remained Outside of the United States for Five Years**

Petitioner's first claim of ineffective assistance of counsel is that his trial counsel "[f]ailed to argue to the trial court that petitioner had remained out of the country for 5 years." (Doc. No. 2 at 2.) Petitioner has not provided the legal basis for this claim,[7] and the Court has been unable to locate any law stating that a defendant who stays outside of the United States for five years may unlawfully and surreptitiously reenter the country without any legal consequences. Petitioner was sentenced for being found in the United States after previously having been deported, in violation

---

[7] The United States recognized this in its Response, stating, "Though it is unclear what legal principle Bramina-Lopez relies upon in making this claim, it appears that Bramina-Lopez is under the impression that he should have received some benefit or consideration from the Court (or perhaps received a dismissal of his case) for remaining out of the United States for five years prior to re-entering the United States. Assuming that this is Bramina-Lopez's argument, Bramina-Lopez has based his claim on a misunderstanding of the law." (Doc. No. 7 at 6-7.)

of 8 U.S.C. § 1326(a) (2006). This statutory provision does not limit the crime to illegal aliens reentering the country within five years of deportation; it criminalizes reentry and being "*at any time found in*" the United States. *Id.* (emphasis added). Moreover, Petitioner pled guilty to this crime, (Crim. Doc. Nos. 41-42, filed Sept. 1, 2005), and he does not challenge the adjudication of his guilt, (*see* Doc. Nos. 1-2). Petitioner has not discussed or demonstrated how an argument concerning the length of time that he remained outside of the country prior to his illegal reentry would have any effect whatsoever on the length of his sentence. Therefore, Petitioner has failed to demonstrate the prejudice prong of the *Strickland* test concerning this first claim of ineffective assistance.

**2. Trial Counsel's Failure to Object to Petitioner's Robbery Conviction**

Petitioner also claims that his trial counsel was ineffective at sentencing because counsel failed "to object that [Petitioner] had not substained [sic] a robbery conviction, but rather a simple theft of a 12 pack of beer." (Doc. No. 2 at 2.) This argument, however, is affirmatively contradicted by the record. Petitioner's counsel in fact made such an objection, and as a result, the Court changed the PSR to reflect that Petitioner was charged with stealing a twelve-pack of beer. (Crim. Doc. No. 55 at 14-19, filed Jan. 17, 2006 (transcript of Nov. 21, 2005 sentencing hearing); Statement of Reasons at 1, signed November 22, 2005; PSR at 4, ¶ 26 (as amended by the Court); Letter from Clarence W. Counts, Assistant Federal Public Defender, to William R. Hutchinson, United States Probation Officer (Oct. 21, 2005).) This fact was also recognized in the opinion of the Eleventh Circuit affirming Petitioner's sentence on direct appeal:

> Bramina-Lopez made only one objection to the [PSR]; he challenged the prior conviction for robbery. The court sustained the objection and changed the [PSR] to reflect Bramina-Lopez's version of the offense, but there was no change in the criminal history category.

*Bramina-Lopez*, 182 F. App'x at 943.

If Petitioner's claim of error is that his counsel did not object to the description of the charged offense as "robbery" instead of "simple theft," his argument lacks merit. The U.S.S.G. indicates that courts should score "each prior sentence of imprisonment" based on the length of the sentence. U.S.S.G. § 4A1.1(a)-(c) (2005).[8] Accordingly, in calculating the score for Petitioner's prior "robbery" charge, the Court looked to the length of the sentence rather than the name of the crime. (PSR at 4, ¶ 26.) Because Petitioner was sentenced to 90 days of imprisonment for this offense, he received a score of 2. (*Id.*); U.S.S.G. § 4A1.1(b). Therefore, whether the crime was described as "robbery" or "simple theft" would make no difference to the score for this offense. Because Petitioner has failed to establish either prong of the *Strickland* test, he has failed to demonstrate ineffective assistance as to this claim.

### 3. Trial Counsel's Failure to Object that Petitioner's Criminal History Category Over-represented His Criminal History

Next, Petitioner contends that his trial counsel was ineffective because counsel failed "to properly object to [Petitioner's] over/representation [sic] of his criminal history category." (Doc. No. 2 at 2.) Petitioner apparently believes that his counsel should have argued for a downward departure under U.S.S.G. § 4A1.3(b)(1) which provides: "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." However, Petitioner makes this conclusory allegation without any argument as to why the criminal history category of VI over-represents his criminal history. He does not challenge his criminal record as set forth in his amended PSR, nor does he challenge the accuracy

---

[8] The 2005 version of the U.S.S.G. was in effect at the time of Petitioner's sentencing on November 21, 2005.

of the calculations of his criminal history score. Significantly, he has not offered any "reliable information" that his criminal history category over-represents the seriousness of his criminal history or the likelihood that he will commit other crimes, as required for a downward departure under U.S.S.G. § 4A1.3(b)(1).

To the contrary, Petitioner's criminal record includes convictions for robbery, possession of cocaine, two counts of rape in the second degree, delivery of a controlled substance, and two convictions for illegal re-entry into the United States. (PSR at 3-6, ¶¶ 26-31.) His record also reveals at least two additional arrests and four separate deportations back to Mexico. (*Id.* at 7, ¶¶ 36-41.) At the time he was sentenced, Petitioner clearly posed a great risk of serious recidivism, as his prior convictions and deportations failed to discourage his continued criminal conduct. Thus, a criminal history category of VI accurately represented the seriousness of Petitioner's criminal history, and any arguments for downward departure would clearly have lacked merit. As the Eleventh Circuit has stated, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994); *accord Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("Moreover, since these claims were meritless, it was clearly not ineffective for counsel not to pursue them."). Therefore, Petitioner has failed to demonstrate ineffective assistance as to his trial counsel's failure to object to Petitioner's criminal history category because Petitioner has not shown deficient performance or any resulting prejudice.

    **4. Trial Counsel's Failure to Argue for a Downward Departure Based on Petitioner's Immediate Deportation Upon Completion of His Sentence**

In addition, Petitioner states that his trial counsel was ineffective for failing to argue: (1) "for a two-level downward departure where Petitioner would of [sic] stipulated to an immediate order

-12-

of deportation," and (2) "that as [sic] alien defendant's deportation may justify a sentence below the federal guideline range." (Doc. No. 2 at 2-3.) Petitioner's argument fails for two reasons. First, Petitioner has already been deported on four previous occasions. (PSR at 7, ¶¶ 38-39, 41.) He nevertheless unlawfully returned to the United States after each of these deportations and continued to engage in criminal conduct in this country. (*Id.* at 3-8, ¶¶ 26-41.) Deportation has had no deterrent effect on Petitioner, and the fact that he is subject to a fifth deportation after he completes his current term of imprisonment does not minimize the need to protect the public from his further crimes. *See* 18 U.S.C. § 3553(a)(2). Therefore, his status as a deportable alien would not have justified downward departure, and trial counsel was not ineffective for failing to raise this argument.

Secondly, appellate courts considering a criminal defendant's status as a deportable alien in illegal reentry cases have concluded that such status is not a valid basis for a downward departure in sentencing. *E.g.*, *United States v. Vasquez*, 279 F.3d 77, 81 (1st Cir. 2002) (citing cases); *United States v. Martinez-Carillo*, 250 F.3d 1101, 1107 (7th Cir. 2001); *United States v. Garay*, 235 F.3d 230, 233-34 (5th Cir. 2000). Though the Eleventh Circuit has not yet reached this exact issue, it has decided three related issues which suggest it would follow the reasoning of the other circuits. First, the Eleventh Circuit has held that a district court may not grant a downward departure "in order to shield the defendant from the immigration consequences Congress has decided should follow from commission of such crimes . . . ." *United States v. Maung*, 320 F.3d 1305, 1309 (11th Cir. 2003). Secondly, the Eleventh Circuit adopted the reasoning of the Second Circuit in *United States v. Restrepo*, 999 F.2d 640, 644 (2d Cir. 1993) and held that:

> (1) the unavailability of preferred conditions of confinement, (2) the possibility of an additional period of detention pending deportation following the completion of the sentence, and (3) the effect of deportation as banishment from the United States

and separation from family were consequences of a defendant's alienage that did not warrant a departure.

*United States v. Veloza*, 83 F.3d 380, 382 (11th Cir. 1996) (quotation marks omitted), *overruled on other grounds as recognized in United States v. Campbell*, 181 F.3d 1263, 1264 (11th Cir. 1999). Lastly, in a case in which a defendant was convicted of conspiracy to possess with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States, the Eleventh Circuit affirmed the district court's denial of the defendant's request for a downward departure based on his willingness to submit to deportation without a hearing. *United States v. Mignott*, 184 F.3d 1288 (11th Cir. 1999). The Eleventh Circuit found that a district court may not recognize consent to deportation as a ground for departure unless the defendant "proffer[s] a nonfrivolous defense to deportation . . . ." *Id.* at 1291. The Eleventh Circuit reasoned that without this prerequisite, "a defendant's consent to a deportation against which he has no apparent defense would be a meaningless concession that fails to remove him from the heartland of other alien criminal defendants facing deportation." *Id.* To support its decision, the Eleventh Circuit cited the illegal reentry cases from other circuits and explained that there was no meaningful distinction between the drug case before it and the illegal reentry cases. *Id.*

Based on this case law, the Court would have rejected any argument that Petitioner deserved a downward departure based his deportable alien status. In addition, because Petitioner has not offered a nonfrivolous defense to deportation, he has not demonstrated how arguing for departure based on a stipulation of deportation would have altered his sentence. *See, e.g.*, *Brid-Tarra v. United States*, No. 1:06-cv-21882, 2008 WL 728535, at *3-4 (S.D. Fla. Mar. 17, 2008) (reaching the same conclusion on similar facts). Therefore, Petitioner has not demonstrated prejudice and therefore has failed to show that he received ineffective assistance as to this claim.

### 5. Trial Counsel's Failure to Offer Mitigating Evidence

Also, Petitioner asserts that his trial counsel was ineffective at sentencing for counsel's failure "to offer a mitigating circumstance for downward departure, that petitioner was lawfully employed at the time of arrest." (Doc. No. 2 at 2.) This contention is affirmatively contradicted by the record. During Petitioner's sentencing hearing, Petitioner's trial counsel argued to the Court:

> And I question whether or not society would be protected by sentencing this gentleman to a term of six to eight years imprisonment. I know he committed a crime, but he didn't commit a drug trafficking offense. He didn't commit a bank robbery. He committed the crime of coming back to the United States.
>
> And when he was found, he had not committed a law violation. *He was working on a roofing project trying to support himself and support his family*.

(Crim. Doc. No. 55 at 8 (emphasis added).) Thus, trial counsel made the very argument that Petitioner claims was not presented at sentencing, and the record belies Petitioner's claim of ineffective assistance.

Even if trial counsel had not made these statements, Petitioner himself brought this mitigating circumstance to the Court's attention when he stated:

> I just want to apologize for coming back to the United States, but I returned because my wife is in Oklahoma and she's disabled and I wanted to help her. And I came back to Florida to work in roofing, and they caught me working en route.
>
> When I went out to eat they stopped me in the car. I was driving the truck. I lost my truck, the tools, and everything, and I still owe money to the person that brought me here. We came to work in Florida, eight of us came. They only brought me, and they let the other ones go. But I was working, and the record that I have is over ten years and I'm sorry because of the record that I have, but I came here to work.

(*Id.* at 5.) Therefore, Petitioner cannot show prejudice because he personally brought his employment to the Court's attention.

-15-

### 6. Trial Counsel's Failure to Argue that Petitioner's Sentence Was Unreasonable

Lastly, Petitioner argues that his trial counsel was ineffective for failing to argue "that the sentence imposed was unreasonable." (Doc. No. 2 at 3.) Petitioner does not offer any explanation as to why an argument as to the unreasonableness of the sentence imposed would be meritorious. He does not argue that the Court committed any procedural error in calculating the appropriate sentencing range under the U.S.S.G. He also does not argue how his sentence is substantively unreasonable under the statutory factors set forth in 18 U.S.C. § 3553(a).

During the sentencing hearing, his trial counsel argued for a sentence of five years which was below Petititioner's guidelines range of 77 to 96 months. (Crim. Doc. No. 55 at 9; PSR at 10, ¶ 58.) The Court found that a departure was not warranted and cited the 18 U.S.C. § 3553(a) factors as a basis for its decision to impose a sentence of 80 months. (Crim. Doc. No. 55 at 10-13, 19-21.) Specifically, the Court stated:

> The Court finds no reason to depart from the sentence called for by application of the guidelines, as the facts as found[] [are] of the kind contemplated by the Sentencing Commission. After considering the advisory Sentencing Guidelines and all of the factors identified in Title 18, United States Code, Section 3553(a)(1) through (7), the Court finds that the sentence imposed is sufficient, but not greater than necessary to comply with the statutory purposes of sentencing.

(*Id.* at 21.) Petitioner has pointed to no specific error in this finding, and he has not otherwise demonstrated that his sentence would have been lower if his trial counsel had argued that 80 months was an unreasonable term of imprisonment. Rather, his claim is merely conclusory and unsupported by law or fact. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th

Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). Because Petitioner has failed to make *any* showing to support this claim, he has not established that his counsel's performance was deficient or that he suffered any prejudice.

## II. Ground Two: Qualification for Downward Departure

As his second ground for Section 2255 relief, Petitioner contends that he "qualified for a two-level downward departure based on his stipulation to deportation." (Doc. No. 1 at 5.) As recognized by the United States, Petitioner here asserts a non-constitutional claim not previously raised before the trial court or on direct appeal. (Doc. No. 7 at 11-13.) Petitioner recognizes that he did not present this claim previously but explains that this was because of the ineffective assistance of his counsel. (Doc. No. 1 at 6; Doc. No. 2 at 4.)

The Eleventh Circuit has held, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (quoting *Reed v. Farley*, 512 U.S. 339, 348 (1994) (brackets omitted)). Additionally, "[u]nder the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing cases). To avoid this procedural bar in the case of a non-constitutional claim, a petitioner "must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." *Id.* (citing cases); *accord Massaro v. United States*, 538 U.S. 500, 504 (2003).

In order to establish cause for procedural default due to ineffective assistance of counsel, a defendant must first prove an independently valid ineffective assistance of counsel claim. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). The Supreme Court has found, "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Id.* Absent such showing, the procedural default is not excused, and the defaulted claim may not be considered on collateral review. *Id.*

As discussed in Section II.B.4, *supra*, Petitioner has failed to establish that his trial counsel was ineffective in his assistance at sentencing. Thus, Petitioner has not demonstrated cause, and the Court may not consider the merits of this claim. Moreover, even if this claim were not procedurally defaulted, it fails on the merits. As the Court previously explained in detail, Petitioner is not entitled to, and would not have been granted in any event, a downward departure based on his status as a deportable alien or his willingness to stipulate to deportation. Therefore, ground two of Petitioner's Motion does not justify habeas relief.

**Conclusion**

Based on the foregoing, the Court finds that Petitioner is not entitled to a hearing because his claims are either facially deficient or affirmatively contradicted by the record. Petitioner has not demonstrated that he is entitled to relief on any of the claims he has raised. Any allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, Petitioner Samuel Bramina-Lopez, true name Deonisio

Montano-Gomez (Doc. No. 1, filed Aug. 27, 2007) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court is directed to file a certified copy of this Order in Criminal Case Number 6:05-cr-100-Orl-19KRS and to terminate the Motion to Vacate Under 28 U.S.C. § 2255 (Crim. Doc. No. 60, filed Aug. 27, 2007) pending in that case.

3. The Clerk of the Court shall enter judgment for Respondent and close this case.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 14, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party